IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

JUSTIN VANDEVANDER,

Plaintiff,

v.                                                           CIVIL ACTION NO.  3:15-11540

VERIZON WIRELESS, LLC
d/b/a CELLCO PARTNERSHIP,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant Verizon Wireless, LLC's ("Verizon") motion to dismiss Plaintiff

Justin Vandevander's ("Mr. Vandevander") claims for West Virginia common law retaliatory

discharge, negligent infliction of emotional distress, and intentional infliction of emotional distress

in Counts III, IV, and V, respectively, pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief may be granted. ECF No. 8. In his Complaint, Mr.

Vandevander alleges Verizon terminated him in violation of the federal Family Medical Leave Act

of 1993 ("FMLA") and West Virginia statute, common law, and public policy. For the foregoing

reasons, the Court **DENIES** Verizon's motion.

**I.        Background**

According to the Complaint, Mr. Vandevander began working as an accounts manager for

Verizon starting on July 27, 2007. Compl. ¶ 4, ECF No. 1–1. At various times during his

employment with Verizon, Mr. Vandevander used vacation time, despite his alleged eligibility for

FMLA leave, to attend hospital visits with his fiancée and to care for his son's serious medical conditions.

In November 2014, Mr. Vandevander informed Verizon's management that he and his then-fiancée were expecting a child, and he requested leave from work to attend pregnancy-related hospital visits with his fiancée, who was living in Pennsylvania at the time. *Id.* ¶¶ 7–8. Verizon, without providing Mr. Vandevander any information about FMLA leave, informed Mr. Vandevander that he would need to take vacation time for the pregnancy-related hospital visits. *Id.* ¶ 9. Once before November 2014, and several times afterward, Verizon failed to provide Mr. Vandevander with FMLA leave for various hospital visits he attended with his fiancée, and Verizon failed to inform Mr. Vandevander of his rights under the FMLA. *Id.* ¶¶ 11–12. In fact, on August 7, 2014 one of Verizon's agents informed Mr. Vandevander that he did not qualify for FMLA leave because he and his fiancée were not married. *Id.* ¶ 14.

Mr. Vandevander has a thirteen-year old son who requires special medical care to treat Attention Deficit Hyperactivity Disorder ("ADHD"), Asperger's, Oppositional Defiant Disorder ("ODD"), and mood disorders. *Id.* ¶ 15. At various times during 2015, Mr. Vandevander would have used FMLA leave to care for his son's medical conditions, but Verizon repeatedly refused to grant him FMLA leave and to notify him concerning his eligibility to use FMLA leave for his son's medical care. *Id.*

On March 20, 2015, after employing Mr. Vandevander for roughly eight years, Verizon terminated him without providing any reason. Compl. ¶ 16.

Subsequently, Mr. Vandevander initiated this action against Verizon in West Virginia state court. Plaintiff's Complaint asserts six claims: Interference with Plaintiff's FMLA rights (Count I), retaliation for exercising FMLA rights (Count II), retaliatory discharge in violation of West

Virginia public policy (Count III), negligent infliction of emotional distress ("NIED") (Count IV)), intentional infliction of emotional distress ("IIED") (Count V), and violation of the West Virginia Wage Payment and Collection Act ("WPCA") (Count VI).

Verizon removed the case to federal court pursuant to federal question jurisdiction and diversity jurisdiction under 28 U.S.C. §§ 1331, 1332 because Plaintiff's FMLA claim arises under federal law and the amount in controversy between these completely diverse parties exceeds $75,000. Notice of Removal, ECF No. 1.

Now, Verizon moves to dismiss Plaintiff's claims for retaliatory discharge in violation of West Virginia public policy (Count III), NIED (Count IV), and IIED (Count V). Def.'s Partial Motion to Dismiss, ECF No 8. Should these claims be dismissed, Verizon also asks the Court to strike Mr. Vandevander's prayer for emotional and punitive damages because the FMLA does not provide for these sorts of damages. *Id.* at 2. After summarizing the standard for deciding this 12(b)(6) motion to dismiss, the Court will discuss each of Verizon's arguments for dismissal in turn.

## II.    Legal Standard

When considering a motion to dismiss, a court follows a two-step approach: (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . ," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements

of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the remaining factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

### III.     Discussion

*A.   Retaliatory Discharge in Violation of West Virginia Public Policy (Count III)*

Verizon argues Mr. Vandevander's claim for retaliatory discharge in violation of West Virginia public policy must be dismissed because, under federal law, the FMLA provides the exclusive remedy in this case, and because the West Virginia Supreme Court of Appeals would not permit this state common law claim to proceed. Def.'s Memo. in Supp. of Partial Mot. to Dismiss 2, ECF No 9 [hereinafter Def.'s Memo in Supp.]. Plaintiff responds that his state retaliation claim meets West Virginia's standard for common law retaliatory discharge, and Plaintiff asks to certify a question to the West Virginia Supreme Court of Appeals because that court has not addressed whether a state retaliatory discharge claim can arise from violation of the policies reflected in the FMLA—the policy source for Plaintiff's West Virginia retaliatory discharge claim. Pl.'s Resp. 4–5, ECF No. 10. As explained below, the Court denies Verizon's

-4-

motion to dismiss Mr. Vandevander's West Virginia retaliatory discharge claim and finds no need to certify a question to the West Virginia Supreme Court at this time.

First, Verizon contends the FMLA provides the "exclusive remedy" in this case and therefore Mr. Vandevander's state retaliation claim must be dismissed. Def.'s Memo in Supp. at 2. Thus, Verizon argues the FMLA preempts Mr. Vandevander's West Virginia common law retaliatory discharge claim.

The FMLA, by its terms, does not preempt state law claims, and the Act's terms reveal Congress' general intent to prevent the FMLA from preempting state law claims. *See* 29 U.S.C. § 2651 ("Nothing in this Act . . . shall be construed to modify or affect any . . . State law prohibiting discrimination on the basis of . . . disability. . . Nothing in this Act . . . shall be construed to supersede any provision of any State or local law that provides greater family or medical leave rights than the rights established under this Act . . ."). Furthermore, although the Fourth Circuit has not addressed the issue, several district courts in the Fourth Circuit and elsewhere have decided the FMLA does not preempt state law claims. *Davis v. Cabela's Inc.*, No. 07-88, 2008 WL 183717, at *2 (N.D.W. Va. Jan. 18, 2008) ("The FMLA itself provides that it does not preempt related state law claims . . .") (citation omitted); *Findlay v. PHE, Inc.*, No. 99-54, 1999 WL 1939246, at *3 (M.D.N.C. Apr. 16, 1999) ("By its own terms, the FMLA does not preempt related state claims, and no part of the statute evinces an attempt by Congress to 'occupy the field.'") (citation omitted); *Danfelt v. Bd. of Cty. Comm'rs of Washington Cty.*, 998 F. Supp. 606, 611 (D. Md. 1998) (holding FMLA does not preempt Maryland law of wrongful discharge because FMLA did not evince Congressional intent to completely preempt the field of state tort law, but rather an intent to

preempt solely those laws in actual conflict with the FMLA).[1] Based on the FMLA's unambiguous language, the Court holds the FMLA does not preempt state law claims, even those claims arising out of the same transaction or occurrence as an FMLA claim.[2] Therefore, the FMLA does not preempt Mr. Vandevander's claim for retaliatory discharge in violation of West Virginia public policy.

Second, Verizon contends Mr. Vandevander's state common law retaliatory discharge claim fails because the West Virginia Supreme Court of Appeals would not permit a common law claim where the policy violated is found in the FMLA and where a statutory remedy exists.

Under West Virginia common law, if the termination of an at-will employee contravenes a "substantial public policy" of the State, that employee has a cause of action for retaliatory discharge in violation of public policy. *Harless v. First Nat'l Bank*, 246 S.E.2d 270, 275 (W. Va. 1978); *see also Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 186 (W. Va. 2010) (re-affirming *Harless*-type claims); *Williamson v. Greene*, 490 S.E.2d 23, 25 (W. Va. 1997) (same). Mr. Vandevander claims his discharge was in retaliation for his attempt to exercise rights under the

---

[1] Several district courts outside of the Fourth Circuit have also ruled the FMLA does not preempt state law claims. *See Arango v. Work & Well, Inc.*, 930 F. Supp. 2d 940, 944 n.1 (N.D. Ill. 2013) ("[A] number of courts have permitted employees to assert FMLA-based tort claims against their employers. *See Rodi v. Target Corp.*, No. 03–507, 2004 WL 626812, at *3 (N.D. Ill. Mar. 26, 2004) (holding that the FMLA did not preempt claim against employer for intentional infliction of emotional distress); *Hunt v. Honda of Am. Mfg. Inc.*, No. 01–1188, 2002 WL 31409866, at *2 (S.D. Ohio Sept. 4, 2002) (holding that wrongful discharge claim was not preempted because the FMLA's savings clause "reveals Congress' intent that the remedies available under the FMLA are not to be considered exclusive, and ... federal law is not to preempt state claims"); *Buser v. S. Food Serv., Inc.*, 73 F.Supp.2d 556, 572 (M.D.N.C. 1999) (rejecting employer's contention that FMLA-based claims for negligent and intentional infliction of emotional distress were preempted).").

[2] In support of its contention that Mr. Vandevander's claims are preempted, Verizon points out that all the facts supporting Mr. Vandevander's retaliatory discharge state law claim are identical to those supporting his FMLA claims. Def.'s Memo in Supp. at 4. This is of no consequence for deciding whether a state claim is preempted by federal law. Many causes of action may arise from a single set of same facts.

FMLA, and this discharge violated a public policy of West Virginia. *See* Compl. ¶¶ 33–50. This Court is aware of no West Virginia case addressing whether discharge of an employee based on that employee's exercising FMLA rights gives rise to a retaliatory discharge claim under West Virginia common law. *See, e.g.*, *Davis*, 2008 WL 183717, at *3 (finding no cases as of 2008). However, West Virginia courts have neatly laid out the rules for determining when a discharge violates a substantial public policy of the State and, in turn, gives rise to a state common law retaliatory discharge claim. And so, the Court will apply West Virginia rules to determine whether Mr. Vandevander has a viable claim under West Virginia common law for retaliatory discharge based on his termination allegedly in violation of public policies underlying the FMLA.[3]

In West Virginia, "an employer will be liable [for common law retaliatory discharge] if [the employer] terminates an at-will employee in contravention of some substantial public policy." *Williamson v. Greene*, 490 S.E.2d 23, 30 (W. Va. 1997). "To identify the sources of public policy for purposes of determining whether a retaliatory discharge has occurred, [West Virginia courts] look to established precepts in [West Virginia's] constitution, legislative enactments, legislatively approved regulations, and judicial opinions." *Id.* at 31 (citing Syl. pt. 2, *Birthisel v. Tri–Cities Health Services, Corp.*, 424 S.E.2d 606 (W. Va. 1992)). A substantial public policy "will provide specific guidance to a reasonable person," and "[a]n employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Id.* (citation omitted). In *Williamson*, the West Virginia Supreme Court of Appeals held the State's Human Rights Act established a "clear and unequivocal

---

[3] The viability of Mr. Vandevander's retaliatory discharge claim depends entirely upon West Virginia common law. *See Davis*, 2008 WL 183717, at *3 ("Although the West Virginia court may look to the FMLA for guidance, it need not construe or apply federal law in deciding whether the defendants' actions violate the public policies of West Virginia.").

public policy against sex discrimination in employment and retaliatory discharge" that was "sufficient to support a common law claim for retaliatory discharge." *Id.* at 32.

Looking to the analysis and decision in *Williamson*, the Court holds the FMLA provides a substantial public policy that could support a West Virginia common law claim for retaliatory discharge in violation of public policy. The unlawful discriminatory practices discussed in *Williamson*—taking certain adverse actions on account of a protected characteristic and retaliating against an individual for opposing practices that violate the West Virginia Human Rights Act— are akin to the sorts of practices the FMLA outlaws.[4]  The FMLA's requirements provide specific guidance to a reasonable person, and subjecting an employer to liability based on violating the FMLA would not expose the employer to liability for violating a standard too general to provide any specific guidance or so vague that it is subject to different interpretations. On the contrary, the FMLA's requirements at issue in this case provide clear and unequivocal standards for employers

_____

[4] The West Virginia Human Rights Act sections discussed in *Williamson* make it an unlawful discriminatory practice "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment." *Williamson*, 490 S.E.2d at 31 (citing W. Va. Code Ann. § 5–11–9(1) (West 2016)). The court in *Williamson* observed the word "discriminate" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of [specified protected characteristics]." *Id.* (citing W. Va. Code Ann. § 5–11–3(h) (West 2016)). And the court noted "W. Va. Code § 5–11–9(7)(C) . . . prohibits an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act." *Id.* (citing Syl. pt. 11, *Hanlon v. Chambers*, 464 S.E.2d 741 (W. Va. 1995)).

Similar to the restrictions on employers discussed in *Williamson*, the FMLA sections that Mr. Vandevander alleges Verizon violated require specific actions from employers. *See* Compl. ¶¶ 24, 25 (citing 29 C.F.R. §§ 825.300(b)(1), (b)(2)). "When an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1) (2015). "The eligibility notice must state whether the employee is eligible for FMLA leave . . . [, and] [i]f the employee is not eligible for FMLA leave, the notice must state at least one reason why the employee is not eligible." *Id.* § 825.300(b)(2).

to follow, and indeed, violating those standards forms the basis of liability under federal law. Therefore, the Court concludes the FMLA's notice requirements allegedly violated in this case, like the West Virginia Human Rights Act's anti-discrimination policies violated in *Williamson*, provide a substantial public policy sufficient to support a West Virginia common law retaliatory discharge claim.[5]

Plaintiff's viable FMLA claim does not temper the Court's conclusion that Mr. Vandevander has sufficiently pled a West Virginia common law retaliatory discharge claim. The West Virginia Supreme Court of Appeals has never held that a common law retaliatory discharge claim's viability is conditioned on the absence of a statutory remedy. *See* Syl. Pt. 8, *Williamson*, 490 S.E.2d at 23 ("Even though a discharged at-will employee has no statutory claim for retaliatory discharge . . . the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State . . ."); *see also* Syl. Pt. 6, *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 186 (W. Va. 2010). In *Williamson*, the West Virginia Supreme Court of Appeals laid out the rules for a sufficient common law retaliatory discharge claim and held the plaintiff pled a viable retaliatory discharge claim. Although the plaintiff was without a statutory remedy in *Williamson*, the court offered no indication that absence of a statutory remedy is a condition precedent for bringing a common law retaliatory discharge claim in West Virginia. There are many facts and circumstances in a case, not all are central to the court's holding. The relevant certified question in *Williamson* was: "Can an 'at-will' employee maintain a tort action at common law for retaliatory

---

[5] The parties have not discussed whether the FMLA, as a federal law, is a proper source of policy for purposes of a West Virginia common law retaliatory discharge claim. Therefore, the Court does not discuss this.

discharge based on allegations of nonphysical sexual discrimination and/or harassment?" *Williamson*, 490 S.E.2d at 30. Notably, the court in *Williamson* used the phrase "*even though*" when it observed the statute did not provide the plaintiff with a remedy. Syl. Pt. 8, *Williamson*, 490 S.E.2d at 23 (emphasis supplied). The court, if it had intended to make absence of a statutory remedy a condition precedent for a common law retaliatory discharge claim, could have used the word *because* or other language indicating that absence of a statutory remedy was central to the court's holding. Lastly, in its conclusion, the court stated "we answer certified question four in the affirmative, as plaintiff may maintain a common law claim for retaliatory discharge based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment violate this State's public policy." *Id.* at 33. As made clear by the analysis offered in *Williamson*, the only requirement for a sufficiently pled common law retaliatory discharge claims is the employer's discharging an employee in violation of a substantial public policy of West Virginia. Further support for this conclusion is found in *Roth*, where the West Virginia Supreme Court of Appeals found the plaintiff had both a viable statutory hostile workplace claim, and a viable common law retaliatory discharge claim, both arising from the same set of facts. *See Roth*, 700 S.E.2d at 189 (W. Va. 2010) (statutory hostile work environment claim sufficiently pled); *id.* at 192 (wrongful termination *Harless* claim sufficiently pled). Therefore, under West Virginia law, if an individual has suffered discharge in violation of a substantial public policy of West Virginia, that individual has a common law retaliatory discharge claim against the employer, even if that individual also has statutory remedies for the employer's action. *See* Syl. Pt. 8, *Williamson*, 490 S.E.2d at 30–33; *Roth*, 700 S.E.2d at 192. Nothing in *Williamson* or *Roth* convinces this Court that a West Virginia common law retaliatory discharge claim's viability depends on the plaintiff being without a statutory remedy.

-10-

Lastly, Mr. Vandevander requests that the Court certify a question to the West Virginia Supreme Court of Appeals.[6] However, in light of the analysis above and the posture of this case, the Court finds certifying a question at this juncture is not prudent.

In sum, Mr. Vandevander's claim for common law retaliatory discharge in violation of West Virginia public policy survives this motion to dismiss. The FMLA does not preempt state law claims that are not in actual conflict with the FMLA. And the FMLA provides a substantial public policy sufficient to support Mr. Vandevander's West Virginia common law claim for retaliatory discharge in violation of public policy. For these reasons, the Court DENIES Verizon's motion to dismiss the claim for retaliatory discharge in violation of West Virginia public policy.

B. *Negligent and Intentional Infliction of Emotional Distress (Count IV) and (Count V)*

With regard to Plaintiff's NIED and IIED claims, Defendant reiterates part of its argument above and contends these too must be dismissed because the FMLA provides the "exclusive remedy" in this case. The Court disagrees. As explained above, the FMLA does not preempt state law claims, *see* 29 U.S.C. § 2651, not even claims of negligent or intentional infliction of emotional distress. *See Buser*, 73 F. Supp. 2d at 572 (holding FMLA did not preempt NIED or IIED claims). As such, the Court DENIES Verizon's motion to dismiss Mr. Vandevander's NIED claim (Count IV) and IIED claim (Count V).

C. *Emotional and Punitive Damages Request*

Mr. Vandevander's Complaint requests both emotional and punitive damages, but the FMLA does not explicitly provide for either of these. *See* 29 U.S.C. § 2617(a)(1)(B) (2014). However, Mr. Vandevander's state law claims for retaliatory discharge, NIED, and IIED have

---

[6] Specifically, Mr. Vandevender wants to ask: "whether a plaintiff may bring a public policy action based on the precepts in the FMLA [so] that a plaintiff may recover for emotional damages not available under the FMLA." Pl.'s Resp. at 5.

survived Verizon's motion to dismiss, and those state claims may support emotional or punitive damages. As such, Mr. Vandervander's request for emotional and punitive damages remain.

### IV.   Conclusion

For the above reasons, the Court **DENIES** Verizon's motion to dismiss Mr. Vandevander's state common law retaliatory discharge, NIED, and IIED claims in Counts III, IV, and V of the Complaint, respectively.

The Court **DIRECTS** the Clerk to send a copy of this written Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        March 7, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE